**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **FARRELL RAY JONES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-08-1236-F** |
| | ) | |
| **JUSTIN JONES, Director,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking habeas relief from his state court conviction. United States District Judge Stephen P. Friot referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response has been filed, and the time for Petitioner to reply has expired. The matter is now at issue. For the following reasons, it is recommended that the petition be denied.

Petitioner challenges his conviction by a jury for murder in the first degree, for which he was sentenced to life imprisonment. Case No. CF-2003-5573, District Court of Oklahoma County. In a summary opinion dated November 15, 2007, the Oklahoma Court of Criminal Appeals affirmed Petitioner's conviction and sentence. Jones v. State, No. F-2006-575 (Okla. Crim. App. November 15, 2007). Response, Ex. 3. Petitioner did not seek certiorari from the United States Supreme Court or post-conviction relief from the state courts.

Petition, 3-4.[1]

Petitioner raises two grounds in support of his petition.  In Ground One, he claims that the prosecutor's use of a co-defendant's out-of-court statement during cross-examination deprived him of his right to confront witnesses in violation of the Sixth and Fourteenth Amendments.   Petition, 6.   In Ground Two, Petitioner claims that a portion of the prosecutor's closing argument deprived him of his right to a fair trial because it was designed to invoke sympathy for the victim.  Id. at 7.

## I. BACKGROUND

On January 29, 1996, Petitioner and two co-defendants attempted to rob one Cecil White outside of Charles Steak House in Oklahoma City, Oklahoma.[2]  During the attempted robbery, Mr. White was shot and killed.  Petitioner's role in the attempted robbery and murder of Mr. White was in dispute at trial as was the issue of whether Petitioner had abandoned his participation in the attempted robbery.  The facts that surround these matters will be discussed in more detail below in addressing Petitioner's grounds in support of his habeas petition.

## II. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal court may only grant a writ of habeas corpus if the state court's adjudication 1) "resulted in a

---

[1]The page numbers from the petition are the pre-printed numbers in the upper right hand corner of the form petition.  Page 3 is actually the second page of the petition.

[2]Separate trials were conducted for each of the three defendants.

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)-(2).   A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision but arrives at a different result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).   A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions but unreasonably applies that principle to the facts of the petitioner's case.  Id. at 413.  "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal reasoning, a federal habeas court still owes deference to the result.  Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003).  A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law."  Id. (quoting Aycox v. Lytle, 196 F.3d 174, 1178 (10th Cir. 1999)).

## III. DISCUSSION

### A. §2254(d) Deference

Before addressing Petitioner's claims, the Court must determine whether the Oklahoma Court of Criminal Appeals' use of a plain error standard in reviewing Petitioner's claims on direct appeal affects the deference this Court owes under 28 U.S.C. § 2254(d) to the state court's determination.

On direct appeal, the Oklahoma Court of Criminal Appeals found that Petitioner failed to timely object to the prosecutor's questions of him on cross-examination about statements made by his co-defendant to the police or to request that the jury be admonished. Thus, the Court found that its review was for plain error. Petitioner argues that his attorney did make timely objections to the questions and the trial court sustained the objections. Petition, Attachment, p.1. Therefore, he contends the Oklahoma Court of Criminal Appeals erred in reviewing for plain error only. Id. The Respondent claims that the Petitioner only objected to the questions after the entire exchange between Petitioner and the prosecutor took place and therefore Petitioner's objections were untimely and the Oklahoma Court of Criminal Appeals properly reviewed the claim for plain error only. Response, 14.

A review of the trial transcript reveals that the Oklahoma Court of Criminal Appeals correctly determined that the Petitioner failed to timely object to the prosecutor's questions of him on cross-examination about statements Petitioner's co-defendant made to the police and the Petitioner failed to request that the trial court admonish the jury to disregard those questions. While the exact questions and Petitioner's answers to the prosecutor's questions

4

will be set forth herein in addressing Petitioner's Confrontation Clause argument, the transcript reveals that it was only after all of the questions were asked and Petitioner's answers given that the Petitioner's attorney asked to approach the bench and lodged an objection to the questions.  Trial Tr. 243-44.  The judge sustained the objection and directed the prosecutor to move on.  Id. at 244.  However, Petitioner's counsel did not request that the jury be admonished.  Id.  Thus, the undersigned cannot say that the Oklahoma Court of Criminal Appeals erred in determining that the Petitioner failed to timely object to the questions and that he did not request that the jury be admonished.

Petitioner likewise argues that his attorney timely objected to the alleged improper closing argument of the prosecutor and thus the Oklahoma Court of Criminal Appeals erred in reviewing that claim for plain error only.  Petition, 8.  Respondent claims that Petitioner's objection to the prosecutor's statements was to a different passage than that which is the basis for Petitioner's complaint herein.  Response, 18.

The statements that the Petitioner contends  amount to prosecutorial misconduct are set forth herein in addressing Petitioner's prosecutorial misconduct claim.   After the statements were made by the prosecutor during closing argument without objection from Petitioner, the prosecutor then stated:

> [Prosecutor] "You know, [Petitioner's attorney] inferred early in his closing statement that [the other prosecutor's] emotion in this case brought out attention that he seemed, thought it was a little bit overdone.
> I submit to you, the day that the State does not care about the murder . . .
> [Petitioner's counsel:] I'm going to object, Your Honor
> [Prosecutor] . . of an innocent victim . . .
> [The Court] Approach." Trial Tr. 330.

5

After approaching the bench, Petitioner's attorney argued that it was improper argument as appealing to the passion of the jury and the trial court directed the prosecutor to just argue the evidence.  Tr. 330-31.

As can be seen from the above, the Petitioner's objection was not to the prosecutor's comments that are raised herein as grounds for relief and thus the undersigned finds that the Oklahoma Court of Criminal Appeals properly found that these comments would be reviewed for plain error.

Regardless, the key question in deciding whether § 2254(d) deference applies to a state court's review for plain error is whether such review constituted a decision on the merits or an enforcement of a state waiver rule.  See Douglas v. Workman, 560 F.3d 1156, 1177-78 (10th Cir. 2009) (per curiam).  If the state court's decision is on the merits, it is subject to § 2254(d) deference.  Id.  If the decision is an enforcement of a state waiver rule, procedural bar principles are applied.  Id. at 1178.  When the court is unable to determine whether the state court's plain error disposition was merits or non-merits based, the court must "assume that the state's review is on the merits and thus afford it § 2254(d) deference."  Id.

In Douglass, the petitioner raised several claims of prosecutorial misconduct in his habeas petition.  Id. at 1176.  On direct appeal, the Oklahoma Court of Criminal Appeals summarily dismissed those claims after reviewing them for plain error.  Id. at 1177.  In doing so, the Court did not state whether it reached the merits of those claims.  Id.  Instead, the Court merely stated, "[W]e have reviewed the remaining comments not properly preserved and find no plain error."  Id. (citing Douglas v. State, 951 P.2d 651, 674 (Okla. Crim. App.

1997)) (alteration in the original).  Applying the above principles, the Tenth Circuit assumed that the Oklahoma Court of Criminal Appeals reached the merits of the petitioner's prosecutorial misconduct claims and afforded § 2254(d) deference to the Court's conclusions.  Id. at 1179.

Here, in rejecting Petitioner's Confrontation Clause and prosecutorial misconduct claims, the Oklahoma Court of Criminal Appeals clearly reviewed the claims on their merits. Accordingly, § 2254(d) deference applies.

**B. Confrontation Clause**

The facts are in dispute regarding Petitioner's role in the planning and execution of the robbery which lead to the murder of Mr. White.  To properly place the prosecutor's use of the co-defendant's statement in context, the undersigned will set forth the testimony of Detective Mike Veasey and the Petitioner.

Detective Veasey testified that he and his partner investigated Mr. White's murder in 1996 but had little information to work with or to solve the crime at that time.  Tr. 163-67. The case remained unsolved until 2003 when Detective Veasey was notified that an individual had given information about a robbery homicide that matched the circumstances of the murder of Mr. White.  Tr. 167.  Detective Veasey interviewed the person, who later was identified as a co-defendant of the Petitioner's and the interview lead to the identification of the Petitioner as being involved in the attempted robbery and homicide.  Tr. 167-68.  As a result of that interview, Detective Veasey made contact with the Petitioner on August 12, 2003.  Tr. 168.  Petitioner was advised of the reason for the detective's interview and he was

7

given his Miranda warnings which he waived. Tr. 168-72.  According to Detective Veasey, Petitioner identified the two co-defendants who were involved in the crime with him.  Tr. 173.  Petitioner told Detective Veasey that he and one of the co-defendants were at Petitioner's aunt's house where they discussed plans to rob someone at Charles Steak House. Tr. 174.  During the conversation, the second co-defendant arrived at the house and they included him in the plan.  Id.  The three men walked to Charles Steak House and went to the rear of the parking lot where they hid in some bushes.  Tr. 174-75.  The plan was for Petitioner and one of his co-defendants to approach and rob a victim while the second co-defendant served as a lookout.  Id. at 175.  The reason the second co-defendant was chosen to serve as a lookout was because Petitioner said he was "hot headed and unpredictable." Id. Petitioner told Detective Veasey that all three men were carrying firearms.  Id.  Petitioner said that after about 15-20 minutes, Mr. White pulled into the parking lot and exited his vehicle. Tr. 178-79.  According to Petitioner, he and his co-defendant approached Mr. White with their guns drawn and advised him that this was a "jack," and to give up his money.  Tr. 179-80.  Petitioner said Mr. White was scared or confused and he began yelling for help.  Tr. 180.  Petitioner claims that at that time the second co-defendant, who had been serving as a lookout, ran from the bushes, ran between the Petitioner and the other co-defendant and a shot was fired.  Tr. 180.  Petitioner claims that he and the co-defendant who had originally approached Mr. White both ran. Tr. 180-81.  As Petitioner looked back he saw the other co-defendant kneeling over Mr. White.  Id.  at 181.  Petitioner told him to run but the co-defendant said he was looking for a shell casing.  Id.  Later all three defendants met back at

8

Petitioner's aunt's house.  Tr. 181.

In contrast, Petitioner testified at trial as to his limited participation in the planning and attempt to rob Mr. White and of his "abandonment" of his participation in the crime before the murder occurred.  More specifically, Petitioner testified that he and one of his co-defendants were at Petitioner's aunt's house.  Tr. 225.  While Petitioner was inside the house, the co-defendant and a person known as "Spider Man" were talking outside.  Tr. 225.[3] Petitioner claims that when he came out of his aunt's house, the two men asked him if he wanted to make some money and he said yes.  Id.  All three men proceeded to the parking lot of Charles Steak House where Petitioner claims he was first informed that the two men planned to rob someone.  Id.  Petitioner testified that the two men asked him if he wanted to participate and he replied that since he was there, he might as well stay.  Id.  Petitioner said that because one of his co-defendants was "unpredictable in his behavior," he suggested the co-defendant just "sit back."  Tr. 226.  Petitioner claims that as Mr. White got out of his car, "Spider Man" approached him with his gun drawn and stated that this was a "jack," at which time Mr. White yelled.  Id.  Petitioner claims that at that point he abandoned the intent to commit a crime and took off running.  Id.  Petitioner claims that he thought he heard two shots fired, but he did not fire a gun, although he admitted that he was carrying one.  Tr. 227. Petitioner testified that he never approached Mr. White and his job was to just "sit back."

---

[3]Apparently there was an attempt to exonerate one of the co-defendants at his trial by claiming that the co-defendant was not present during the robbery and murder but instead someone named "Spider Man" was present.  Tr. 195, 205-06.  The identity of the co-defendant is not relevant to the issues raised herein.

Tr. 235, 237-38.  He testified that he was carrying a gun for his safety.  Tr. 237.  As noted,

Petitioner claims that he abandoned his participation in the crime as "Spider Man"

approached Mr. White.  Tr. 238.  Petitioner testified that his testimony at trial was exactly

what he had told Detective Veasey at the earlier interview.  Tr. 232.  Petitioner denied telling

Detective Veasey what Detective Veasey testified to at trial as to Petitioner's knowledge and

involvement in the attempted robbery and murder of Mr. White.  Tr. 241-42, 248-50.

On cross-examination, the prosecutor sought to establish that Petitioner had a motive

for changing his story and questioned him as follows:

> Q.  And you're not disputing that Cecil White was murdered, are you?
> A.  No, sir.
> Q.  You want this jury here to believe that it was Travis O'Neal [a co-defendant] that shot Cecil White, right?
> A.  Yes, sir.
> Q.  And you're not saying that Travis O'Neal shouldn't be punished, right?
> A.  I'm not the say-so of that.
> Q.  You're just saying you shouldn't be punished, correct?
> A.  No, I shouldn't.
> Q.  Okay.  And you're a little bit upset with Travis O'Neal, aren't you?
> A.  No, sir.
> Q.  Well, you know that Travis O'Neal talked to Detective Veasey, too, right?
> A.  Yes, sir.
> Q.  And you know that Travis O'Neal told Detective Veasey that the robbery was your idea; isn't that right?
> A.  I don't know.
> Q.  And, in fact, you know that Travis O'Neal told Detective Veasey that he was the one that tagged along and that you were the one that planned the whole thing; isn't that right?
> A.  I do not know.  I haven't read his statements.
> Q.  You said you got statements, got the police reports from your attorney about a week ago, right?
> A.  Yes.
> Q.  And you read through those, didn't you?
> A.  Yes, but I never read his report.

Q.  And you know that Travis O'Neal told Detective Veasey that you rushed up to Cecil White or to Cecil White, grabbed him by the collar and that that's when a shot rang out; isn't that right?
A.  I do not know.

Id. at p. 242-44.

Petitioner alleges that the prosecutor's use of the co-defendant's statement during cross-examination violated his constitutional right to confront his accusers.  Petition, 6. Petitioner further alleges that any violation of the Confrontation Clause was not harmless because 1) admission of the confession negated his abandonment defense, and 2) the evidence used to convict him was not overwhelming. Id. at Attach., p. 1.

The Oklahoma Court of Criminal Appeals found that the prosecutor used the co-defendant's statement during his cross-examination of Petitioner to challenge Petitioner's credibility in recanting his confession to Detective Veasey and to show Petitioner's motive to implicate the co-defendant as the leader and shooter.  Response, Ex. 3, p. 2.  Thus, the Court found that the statements did not violate the Confrontation Clause, citing Stouffer v. State, 147 P.3d. 245, 264 (Okla. Crim. App. 2006), which in turn cited Crawford for the proposition that the Confrontation Clause does not bar the use of testimonial statements admitted for purposes other than establishing the truth of the matter asserted.   Id. Alternatively, the Court found that any error was harmless beyond a reasonable doubt.  Id.

**1. Confrontation Clause Violation**

On habeas review, a state court's determination admitting hearsay under state law is not dispositive of the Confrontation Clause issue.  See Paxton v. Ward, 199 F.3d 1197, 1208

(10th Cir. 1999).  Instead, the federal court must determine "whether [the state court's determination] is reasonably supported by the record and whether its legal analysis is constitutionally sound."  Id. at p. 1209.  This approach conforms with the requirements of AEDPA.  Id.

The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. amend. VI.  The purpose of the Confrontation Clause is to allow the accused to test the reliability of a witness' testimony through cross-examination.  Crawford v. Washington, 541 U.S. 36, 61 (2004); see also United States v. Cesareo-Ayala, 576 F.3d 1120, 1130 (10th Cir. 2009) ("The role of the hearsay rule (and the related component of the right to confrontation) is to protect against statements that cannot be challenged by cross-examining the speaker.").  In determining whether the challenged evidence violated the Confrontation Clause, the court employs a three-part test.  United States v. Mendez, 514 F.3d 1035, 1043 (10th Cir. 2008), cert. denied 128 S.Ct. 2455 (2008).  First, the court asks whether the evidence is hearsay.[4]  Id.  Second, whether the evidence is testimonial and lastly, whether its introduction was harmless error.  Id.

The co-defendant's statement was clearly testimonial.  See Crawford, 541 U.S. at 52 ("Statements taken by police officers in the course of interrogations are also testimonial

---

[4]"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c) (internal quotation marks omitted); see also Okla. Stat. tit. 12, § 2801(A)(3).

under even a narrow standard."); <u>Davis v. Washington</u>, 547 U.S. 813, 822 (2006) (statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution").  However, Petitioner has not shown that the decision of the Oklahoma Court of Criminal Appeals was contrary to or involved an unreasonable application of clearly established law in finding that testimonial statements offered for purposes other than establishing the truth of the matter asserted, do not violate the Confrontation Clause.  In fact, the Court's decision is clearly in line with established federal law.  <u>See</u> <u>United States v. Faulkner</u>, 439 F.3d 1221, 1226 (10th Cir. 2006) ("One thing that is clear from <u>Crawford</u> is that the [Confrontation] Clause has no role unless the challenged out-of-court statement is offered for the truth of the matter asserted in the statement. . . . In other words, the Clause restricts only statements meeting the traditional definition of hearsay.").

Further, Petitioner has not shown that the decision of the Oklahoma Court of Criminal Appeals was an unreasonable determination of the facts in light of the evidence at trial.  The prosecutor was clearly trying to question the credibility of Petitioner's testimony at trial where he denied making statements to Detective Veasey to which Detective Veasey testified. Further, the prosecutor was trying to show Petitioner's motive in identifying the one co-defendant as the leader of the plan and the one who shot Mr. White.  As the statements were not offered for the truth of the matter, they were not hearsay and were not barred by the Confrontation Clause.  <u>See</u> <u>United States v. Blake</u>, No. 07-8050, 284 Fed. App'x 530, 541

(10th Cir. July 3, 2008) (wife's statements admitted through law enforcement officer did not

violate testifying defendant's Confrontation Clause rights because statements were not

hearsay).[5]  For these reasons, the Oklahoma Court of Criminal Appeals' finding that the

prosecution's use of the co-defendant's statement during cross-examination did not violate

the Confrontation Clause was not contrary to or an unreasonable application of federal law

or an unreasonable determination of the facts.

## 2.  Harmless Error

Even if it was error to admit the co-defendant's statement, the Oklahoma Court of

Criminal Appeals did not act unreasonably in determining that such error was harmless.  In

a habeas proceeding, the standard for determining harmless error is whether the error "had

[a] substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

Abrahamson, 507 U.S. 619, 623 (1993).  In reviewing for harmless error, the court does not

strip the inadmissible testimony from the record but examines the entire record to determine

the degree to which the error influenced the jury.  Tuttle v. Utah, 57 F.3d 879, 884 (10th Cir.

1995); Hellums v. Williams, No. 00-2109, 00-2100, 16 Fed App'x 905, 911 (10th Cir. Aug.

8, 2001) (citing Kotteakos v. United States, 328 U.S. 750, 765 (1946)).  If the court is in

grave doubt as to whether the inadmissible testimony had a substantial and injurious effect

or influence in determining the jury's verdict, the petitioner must win.  O'Neal v. McAninch,

513 U.S. 432, 436 (1995).  In determining whether harmless error exists, the court examines

---

[5]This and any other unpublished disposition are cited pursuant to Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

the following factors: "[1] the importance of the witness' testimony in the prosecution's case, [2] whether the testimony was cumulative, [3] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, [4] the extent of cross-examination otherwise permitted, and . . . [5] the overall strength of the prosecution's case."  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).  A review of the record shows that any Confrontation Clause violation was harmless error.

Detective Veasey testified that Petitioner admitted that he and his two co-defendants planned the robbery, all three were armed and that he and one of his co-defendants actually approached Mr. White with their guns drawn.  While at trial Petitioner denied much of what Detective Veasey testified to, Petitioner did admit he was armed with a firearm and was a willing participant in the plan to rob someone at Charles Steak House.  Under either scenario, Petitioner's involvement in the robbery was enough to hold him responsible for the murder of Mr. White.  See Okla. Stat. tit. 21, §§ 172; 701.7(B); Conover v. State, 933 P.2d 904, 915 (Okla. Crim. App. 1997) ("Proof that [a criminal defendant] aided and abetted in the [crime] require[s] evidence of acts, words, or gestures by [the criminal defendant] encouraging, procuring, aiding, assisting, or advising . . . in the commission of the [crime].");  Bravo v. O'Dell, 166 Fed.Appx. 366, 369-71 (10th Cir. Feb. 6, 2006).  Thus, Petitioner was equally culpable for Mr. White's murder, unless the jury concluded that he effectively abandoned the planned robbery, see Okla. Uniform Jury Instructions, Criminal, 2-7.  The jury was properly instructed on the defense of abandonment, Original Record, 106, and by its verdict found that Petitioner had not effectively abandoned the attempted robbery.  Further, Petitioner testified

that he did nothing to stop the attempted robbery and did not inform anyone of the impending robbery.  Trial Tr., 257-59.  Additionally, Petitioner never testified that he informed his accomplices that he intended to abandon the attempted robbery.  Thus, the jury's finding was appropriate given the facts.  See Okla. Uniform Jury Instructions, Criminal, 2-7; Daniels v. State, 558 P.2d 405, 411 (Okla. Crim. App. 1976) (it takes more than a change of mind to exonerate the defendant).  For these reasons, the Oklahoma Court of Criminal Appeals' finding of harmless error was not contrary to or an unreasonable application of federal law or an unreasonable determination of the facts.

## C. Prosecutorial Misconduct

Petitioner has failed to allege which portions of the prosecutor's closing argument constituted the alleged prosecutorial misconduct.  However, Petitioner raised the same argument on direct appeal, alleging the following statements constituted prosecutorial misconduct:

> You know, [Petitioner] told you earlier on the stand that he didn't think he deserved this.  Well, I'll tell you what, Cecil White didn't deserve this. Cecil White; 65 years old; disabled veteran; innocent bystander who usually had to use a cane to get around.  And, you know, [Petitioner] told you that he had that Colt .45 on him to defend himself.  Who came to Cecil White's defense? Nobody.  Who caused his death? [Petitioner], along with the two others.  And because of his actions Cecil White, in the bitter cold, without friends or family nearby, laying in the dark, slowly died because he bled to death.  He's the one who didn't deserve this.
> Cecil White didn't deserve to lie there gasping for air while he regurgitated on blood in his nose and his mouth that came from all the pooling in his stomach cavity.  Justice demands that [Petitioner] be held accountable for his actions.

Trial Tr., 329-30; Response, Ex. 1, p. 8.  Because Petitioner failed to allege which portions

of the prosecutor's closing argument constituted the alleged prosecutorial misconduct, the undersigned will only review the above quoted paragraphs for prosecutorial misconduct. See Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the [pro se] litigant's attorney in constructing arguments and searching the record.").

Petitioner alleges that the prosecutor's closing argument "was not a fair comment on the evidence and was intended to prejudice the jury by envoking [sic] sympathy for the victim."[6] Petition, 7.  According to Petitioner, the alleged prosecutorial misconduct denied him his right to a fair trial. Id. at 8.  The Oklahoma Court of Criminal Appeals found that the record as a whole showed that "the challenged comments neither deprived [Petitioner] of a substantial right nor denied him a fair trial."  Response, Ex. 3, p. 2.  Respondent argues that the Court acted reasonably in finding no prosecutorial misconduct because the prosecutor's closing argument was based on reasonable inferences drawn from the evidence and was in response to Petitioner's trial testimony.  Response, 20-21.

Prosecutorial misconduct violates a petitioner's right to a fair trial "only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); Knapp v. Janecka, No. 09-2001, 2009 WL

---

[6] Petitioner also alleges that the prosecutor improperly used hearsay evidence in his closing argument.  Since the undersigned has already determined that the use of the co-defendant's statement did not violate the Confrontation Clause, the prosecutor's use of that statement during closing argument was not improper.

2138422, at *3 (10th Cir. July 20, 2009). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Instead, the court "examine[s] the entire proceeding, including the strength of the evidence against the petitioner . . . as well as any cautionary steps–such as instructions to the jury–offered by the court to counteract improper remarks." Bland, 459 F.3d at 1024 (internal alteration and quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Id. In making that assessment, the court must keep in mind that a prosecutor is allowed to respond to a defendant's argument. Douglas v. Workman, 560 F.3d 1156, 1177 (10th Cir. 2009). Further, a prosecutor's comments invoking jury sympathy for the victim do not rise to the level of prosecutorial misconduct unless those comments so infected the trial that they rendered it fundamentally unfair. Le v. Mullin, 311 F.3d 1002, 1015 (10th Cir. 2002) (citing Payne v. Tennessee, 501 U.S. 808, 831 (1991) (O'Connor, J., concurring)); see also Taylor v. Parker, No. 06-6262, 276 Fed. App'x 772, 775 (10th Cir. Apr. 29, 2008) (prosecutor's comments invoking sympathy for victim did not so infect trial with unfairness as to deny due process).

Petitioner has failed to establish that the prosecutor's comments rendered his trial fundamentally unfair. As detailed above, Petitioner's testimony 1) placed him at the scene of the crime, 2) showed he knew about the impending attempted robbery, 3) implicated him as a principal in Mr. White's murder, and 4) foreclosed any defense of withdrawal. The alleged prosecutorial misconduct constituted only a small part of the prosecutor's closing

argument and was in direct response to Petitioner's statement that he should not be punished for Mr. White's murder. Trial Tr., 242-43, 329-30. Also, Petitioner failed to object to the above-quoted portion of the prosecutor's closing argument. See Le, 311 F.3d at 1013 ("Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment."). As discussed above in determining whether §2254(d)'s deference applies, while Petitioner subsequently objected, that objection was to the prosecutor's later statement in responding to Petitioner's counsel's inference that the prosecutor was a little too emotional. Trial Tr. 330-31. Further, the prosecutor's comments were based on the evidence submitted at trial. The evidence at trial showed that 1) Mr. White was a disabled veteran, Trial Tr. 30-31; 2) he walked with a cane, id. at 30; 3) it was cold on the night of his death, id. at 72; 4) he bled to death, id. at 154; and 5) he regurgitated his own blood id. at p. 156. See Gaines v. Workman, No. 08-6234, 326 Fed. App'x 449, 454 (10th Cir. Mar. 31, 2009) (the district court was correct in finding no prosecutorial misconduct where "the prosecutor's closing argument was based on reasonable inferences from the evidence"). The trial court also instructed the jury that the arguments of the attorneys are not evidence. Original Record, 75. The Court must assume that the jury followed those instructions. United States v. Carnagie, 533 F.3d 1231, 1243 (10th Cir. 2008), cert. denied, 129 S. Ct. 1366 (2009), and cert. denied, 129 S. Ct. 1385 (2009). Finally, the prosecution had a strong case against Petitioner. For these reasons, the Oklahoma Court of Criminal Appeals' decision finding that the prosecutor's comments did not render Petitioner's trial fundamentally unfair was not contrary to or an unreasonable application of federal law or an

19

unreasonable determination of the facts.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the petition for a writ of habeas corpus be denied.  The Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by November 20, 2009, in accordance with 28 U.S. § 636 and Local Court Rule 72.1.  The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 30th day of October, 2009.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE